UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BROWN,<br><br>    Plaintiff,<br><br>    v.<br><br>CHIPOTLE MEXICAN GRILL, INC., et al.,<br><br>    Defendants. | Case No. 16-cv-00174-EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>Docket No. 17 |

## I.    INTRODUCTION

Plaintiff William Brown filed the instant action in state court against Chipotle Mexican Grill, alleging, *inter alia*, that Chipotle harassed Plaintiff "through severe and pervasive slurs" and terminated Plaintiff after Plaintiff opposed and complained about the "alleged discrimination/retaliation/harassment and illegal conduct." Docket No. 1-1, Compl. ¶¶ 12, 14. Plaintiff asserted fourteen causes of action. Compl. at 6-14. Chipotle subsequently removed the case to federal court. Docket No. 1 (Not. of Removal). Currently pending before the Court is Plaintiff's Motion to Remand the case to the Superior Court of Alameda County. Docket No. 17 ("MTR").

## II.    BACKGROUND

This action arises out of Plaintiff's termination from Chipotle. Compl. ¶ 16. Plaintiff alleges that Defendant failed to allow him 10 minute rest breaks every four hours and 30 minute meal periods every five hours. *Id.* ¶ 9. Plaintiff also alleges that Defendants' employees harassed Plaintiff through severe and pervasive slurs, propositions, and insults. *Id.* ¶ 12. After Plaintiff complained, Defendant subjected Plaintiff to a series of adverse employment actions and terminated Plaintiff. *Id.* ¶ 16.

1  Plaintiff filed this action in the California Superior Court of Alameda County on
2 November 5, 2015, alleging claims under the California Labor Code and California Fair
3 Employment and Housing Act (FEHA). Chipotle was served with the Complaint on December
4 11, 2015, and removed the action on January 11, 2016 on the basis of diversity jurisdiction. Not.
5 of Removal at ¶ 8.

### III.  DISCUSSION

#### A.  Standard of Review

Jurisdiction in this case is governed by 28 U.S.C. § 1332, or diversity jurisdiction. In order for this Court to have jurisdiction, there must be complete diversity between the parties – which the parties do not dispute exists in the instant case – and the amount in controversy must exceed $75,000. "The party invoking the removal statute bears the burden of establishing federal jurisdiction. Furthermore, the removal statute is strictly construed against removal jurisdiction." *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003). In order to satisfy its burden, a defendant must "provide *evidence* establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (quoting *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996)) (emphasis added). Further, a speculative argument as to the amount in controversy is insufficient to satisfy the jurisdictional requirement. *Gaus*, 980 F.2d at 567; *see also Matheson*, 319 F.3d at 1090-91 ("Conclusory allegations as to the amount in controversy are insufficient.").

#### B.  The Court is Remanding the Case Because Chipotle Has Not Satisfied Its Burden of Proof

The parties dispute whether this Court has jurisdiction to hear this case based on diversity jurisdiction as the parties dispute whether the amount in controversy exceeds the jurisdictional minimum of $75,000. Plaintiff asserts fourteen causes of action against Chipotle: (1) failure to

1    pay timely earned wages upon termination from employment; (2) failure to furnish accurate
2    payroll records; (3) unfair competition; (4) wrongful termination in violation of public policy; (5)
3    violation of labor code s. 1102.5; (6) violation of labor code s. 6310; (7) discrimination in
4    violation of fair employment and housing act ("FEHA"); (8) failure to prevent discrimination in
5    violation of FEHA; (9) harassment in violation of FEHA; (10) failure to prevent harassment in
6    violation of FEHA; (11) retaliation in violation of FEHA; (12) violation of the California Family
7    Rights Act ("CFRA"); (13) failure to engage in the interactive process and provide reasonable
8    accommodation; (14) failure to comply with meal/rest period requirements.  Compl. at 6-14.

9    Plaintiff seeks payment of all statutory obligations and penalties as required by law; for
10   penalties, special damages, compensatory, and general damages in an amount to be proven at trial;
11   for reasonable attorneys' fees; for loss of income incurred; and other relief.  Compl. at 13-14.

12   Plaintiff contends Chipotle has not satisfied its burden in showing that Plaintiff's claim
13   exceeds $75,000 because Chipotle has not proven by a preponderance of evidence that the
14   controversy exceeds the diversity jurisdiction threshold of $75,000.  MTR at 4.  In response,
15   Chipotle argues that Plaintiff's claim for punitive damages and emotional distress will satisfy the
16   jurisdictional minimum of $75,000.  MTR at 4-5.

17   In the instant case, the Court finds that Chipotle has failed to satisfy its burden that the
18   amount in controversy has been met.  First, Chipotle's estimate that the lost wages would amount
19   to over $38,000 is speculative.  In the Notice of Removal, Chipotle estimates that based on
20   Plaintiff's base salary of $9.25 per hour, Plaintiff's damages for lost wages from November 7,
21   2014 (when Plaintiff was terminated) through the date of removal would be in excess of $20,000.
22   NOR at ¶ 32.  Further, if the case was to be resolved at trial by January 2017, "Plaintiff's
23   unmitigated lost wages could amount to over $38,000." *Id.*  This calculation appears to assume
24   that Plaintiff worked 40 hours per week every week; however, Chipotle does not produce any
25   evidence that Plaintiff did have such a work schedule when employed by Chipotle.  *Compare with*
26   *Archibold v. Time Warner Cable, Inc.*, Case No. CV 15-1776 FMO (JPRx), 2015 U.S. Dist.
27   LEXIS 68578, at *5-6 (C.D. Cal. May 27, 2015) (rejecting the defendant's calculation of damages
28   where the defendant used the plaintiff's hourly rate of $21.64 to calculate $82,000 in lost wages,

3

1  but did not provide any evidence as to the basis for its calculations, including "the number of
2  hours defendant used to reach its total, the number of hours a week plaintiff worked when she
3  worked for defendant, and whether she worked the same hours every week"). In short, Chipotle
4  has failed to substantiate its estimate that the unmitigated lost earnings would amount to $38,000.

Second, Chipotle provides no estimate of what Plaintiff's attorney's fees will be. At most, Chipotle points to an e-mail from Plaintiff's counsel that attorney's fees through removal "should not exceed $15,000." *See* Docket No. 24-1 (De Warmes Dec.), Exh. C. This e-mail only states an upper maximum of attorney's fees spent through removal; it does not state that $15,000 *is* the amount spent. But even if Plaintiff's attorney's fees amounted to $15,000 through removal, Chipotle provides no estimate or evidence of what attorney's fees will be following removal. Thus, at this point the Court can only assume $15,000 as the amount in controversy.[1]

Third, Chipotle has failed to provide any reliable measure of emotional distress or punitive damages. As a general matter, "[i]t is well established that punitive damages are part of the amount in controversy in a civil action." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001). "However, the mere possibility of a punitive damages award is insufficient to prove that the amount in controversy requirement has been met." *J. Marymount Inc. v. Bayer Healthcare, LLC*, No. C 09-03110 JSW, 2009 U.S. Dist. LEXIS 118882, at *11 (N.D. Cal. 2009). Thus,

---

[1] This Court has recognized that "[t]here is a split in authority regarding when to measure the attorney's fees for purposes of determining the amount in controversy. Some courts include only the fees incurred as of the date of the complaint, some include the fees as of the date of removal, and others include a reasonable estimate of fees likely to be recovered through resolution of the matter." *Renazco v. Unisys Tech. Servs., LLC*, No. C-14-4204 EMC, 2014 U.S. Dist. LEXIS 168922, at *13 (N.D. Cal. Dec. 5, 2014); *see also Dukes v. Twin City Fire Ins. Co.*, No. CV-09-2197-PHK,NVW, 2010 U.S. Dist. LEXIS 3617, at *5-6 (D. Ariz. Jan. 6, 2010) (noting that "there is disagreement within this circuit as to whether attorney's fees incurred after the date of removal are properly included in the amount in controversy, and concluding that "the better view is that attorneys' fees incurred after the date of removal are not properly included because the amount in controversy is to be determined as of the date of removal[, and that f]uture attorneys' fees are entirely speculative, may be avoided, and are therefore not 'in controversy' at the time of removal"); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1011 (N.D. Cal. 2002) (considering the reasonable estimate of fees likely to be recovered to calculate the amount iin controversy because "[t]he amount of fees commonly incurred in similar litigation can usually be reasonably estimated based on experience").

The Court does not need to resolve this issue because Chipotle provides no estimate of what attorney's fees will be following remand, focusing solely on the $15,000 estimated by Plaintiff's counsel. *See* Docket No. 24 at 5-6 ("Opp'n").

4

"when determining the amount in controversy, 'a claim for punitive damages is to be given closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damage.' " *Bell-Sparrow v. Wiltz*, No. C 12-02782 SI, 2014 WL 2927354, at *4 (N.D. Cal. June 27, 2014) (quoting *Larkin v. Brown*, 41 F.3d 387, 389 (8th Cir. 1994)); *see also Conrad Associates v. Hartford Acc. & Indem. Co.*, 994 F. Supp. 1196, 1201 (N.D. Cal. 1998) ("Defendant's burden cannot be met simply by pointing out that the complaint seeks punitive damages and that any damages awarded under such a claim could total a large sum of money, particularly in light of the high burden that must be met in order for a plaintiff even to be eligible for receipt of discretionary punitive damages.").

Here, Chipotle has not satisfied its burden of proof to establish that the punitive damages would raise Plaintiff's claim to above the jurisdictional amount of $75,000.

Chipotle argues that "specific jury verdicts in employment cases in California indicate that verdict awards well in excess of the jurisdictional requisite have been awarded to plaintiffs (including short-term employees with minimal or no economic damages) in cases alleging harassment, discrimination, and wrongful termination." NR at ¶ 38. However, "[w]hile settlements and jury verdicts in similar cases can provide evidence of the amount in controversy, the cases must be factually identical or, at a minimum, analogous to the case at issue." *Mireles v. Wells Fargo Bank, N.A.*, 845 F. Supp. 2d 1034, 1055 (C.D. Cal. 2012).

For example, in *Rindels v. Tyco Integrated Security, LLC*, the district court rejected the defendants' reliance on "a host of litigation decisions, including employment decisions, that resulted in high damage amounts and high attorney fees." No. CV 14-6536 RSWL (CWx), 2015 U.S. Dist. LEXIS 13409, at *9 (C.D. Cal. Feb. 4, 2015). The district court explained that the defendants "d[id] not, however, do sufficient work to draw parallels between the instant case and those decisions, nor is there any specific allegation of these damages." *Id.* Furthermore:

> as Plaintiff correctly notes, all cited cases went through trial and resulted in noteworthy verdicts.  If Defendants' argument is that large judgments are possible, they are correct.  Defendants' burden of proof, however, requires that they establish that it is more likely than not that damages will satisfy the amount-in-controversy.  In citing to other employment cases, Defendants make arguments such

5

> as "the 'realities of modern law practice' indicate the reality of the huge potential exposure," Opp'n 8:23-24 (quoting *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998), and "[a]ttorney's fees are a reality in employment litigation cases," Opp'n 8:26. These generalities simply do not provide the Court with sufficient evidence, paired with analysis of analogous case law, to find it more likely than not that in *this instance*, attorneys fees will be so substantial as to carry the amount in controversy over the threshold.

*Id.* at *9-10.

In the instant case, Chipotle cites cases where "[d]amages allegations similar to those being made by Plaintiff in this action have been held insufficient to satisfy the amount in controversy requirement." NR at ¶ 37. However, Chipotle fails to analogize the cases cited in the notice of removal to the instant matter. Instead, Chipotle simply lists eight verdicts in employment cases which included substantial emotional distress and punitive damages awards. *See* NR at ¶ 38. Chipotle provides no information about the specific facts of the case beyond the general claims at issue. *Id.* at ¶¶ 38(a) (sexual harassment and retaliation case); 38(b) (sexual battery and intentional infliction of emotional distress case); 38(c) (sexual assault and sexual harassment case); 38(d) sexual harassment case); 38(e) (retaliation and wrongful termination); 38(f) (sexual harassment, retaliation, and constructive discharge case); 38(g) (discrimination and wrongful termination case); 38(h) (retaliation and wrongful termination case). Perhaps because of this lack of facts, Chipotle fails to draw any comparisons between the facts of the instant case and those listed, or explain why the verdicts in those case are likely to inform the verdict here. *Compare with Killion v. AutoZone Stores Inc.*, 2011 WL 590292, *2 (C.D. Cal. 2011) ("Defendants cite two cases . . . in which punitive damages were awarded, but make no attempt to analogize or explain how these cases are similar to the instant action . . . Simply citing these cases merely illustrate[s] that punitive damages are possible, but in no way shows that it is likely or probable in this case. Therefore, Defendants' inclusion of punitive damages in the calculation of the jurisdictional amount is speculative and unsupported."); *Richwood v. Brinker Int'l Payroll Co., L.P.*, 16-cv-1683-SVW-JEM, 2016 U.S. Dist. LEXIS 56271, at *5 (C.D. Cal. Apr. 27, 2016) (remanding case where the defendants estimated compensatory damages in the amount of $37,121.85, but "fail[ed] to establish any reliable measure of emotional distress damages or punitive damages" because the

6

1  "[d]efendant merely attaches a handful of jury verdicts in other race discrimination cases dated as
2  far back as 1998 without any attempt to analogize those cases to the present case").
3        Chipotle failed to analogize because the Complaint contains bare bones conclusory
4  allegations (and its chart was bare bones).  Plaintiff only alleges that Defendants harassed,
5  discriminated, and retaliated against him by failing to provide him breaks, reasonable
6  accommodation, leave to care for his child and father, harassing him through severe and pervasive
7  slurs, demoting him, subjecting him to discipline, and terminating him.  (Compl. ¶¶ 9, 11, 12, 13,
8  16).  Moreover, as to his emotional distress, Plaintiff only alleges that "Defendants acted with
9  oppression, malice, and/or conscious disregard of Plaintiff's rights . . . ."  Compl. ¶ 31.  There is
10  no evidence as to why any emotional distress damages from other cases (the majority of which
11  involved sexual harassment or assault) are apt comparisons to the instant case.
12        Defendant's reliance on *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct.
13  547 (2014) to establish the jurisdictional amount is misplaced.  Defendant incorrectly contends
14  that after *Dart Cherokee*, a defendant need only plausible allegations related to the amount in
15  controversy.  Docket No. 24 at 5 ("Opp'n").  As the Supreme Court made clear, "when the
16  plaintiff contests, or the court questions, the defendant's allegation" regarding the amount in
17  controversy, "[e]vidence establishing the amount is required" and the removing party must
18  establish that the jurisdictional amount is met by a preponderance of the evidence.  *Id*. at 554.
19  Thus, contrary to Defendant's contention, the Supreme Court did not undermine existing Ninth
20  Circuit precedent regarding either the presumption against removal or the removing party's burden
21  to demonstrate the removal is proper.
22        As the removal statute is construed against removal, removal must be rejected if there is
23  any doubt as to removal requirements being satisfied.  The Court holds that Defendant has not met
24  its burden in proving it is more likely than not that the jurisdictional minimum has been satisfied.
25  It therefore remands the case.
26  ///
27  ///
28  ///

7

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Defendant has failed to meet its burden to show that the amount in controversy exceeds $75,000. Accordingly, the Court **GRANTS** Plaintiff's motion to remand.

This order disposes of Docket No. 17.

**IT IS SO ORDERED**.

Dated: June 21, 2016

_____
EDWARD M. CHEN
United States District Judge